FILED
2014 Jun-24  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **WYATT N. KEEFER,**  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | Civil Action Number |
| **v.**  ) | **5:12-cv-02138-AKK** |
| ) | |
| **CAROLYN W. COLVIN,**  ) | |
| **Acting Commissioner of**  ) | |
| **Social Security**  ) | |
| **Administration,**  ) | |
| ) | |
| Defendant.  ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Wyatt N. Keefer brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the ALJ's decision is supported by substantial evidence and he applied the correct legal standards. Thus, the court will **AFFIRM** the decision denying benefits.

## I. Procedural History

Keefer protectively filed his applications for disability insurance benefits and supplemental security income on December 31, 2008, alleging a disability

onset date of November 15, 2007, (R. 118-127), due to back problems, arthritis, left leg numbness, and anxiety, (R. 181).  After the SSA denied his applications on March 11, 2009, (R. 96-105), Keefer requested a hearing, (R. 88-95).  At the time of the hearing on September 3, 2010, Keefer was thirty-four years old, (R. 118), and had an eighth grade education, (R. 45).  Keefer had past relevant medium, skilled work as a house painter and light, semi-skilled work as an ambulance light installer.  (R. 22).  Although the ALJ found Keefer has engaged in substantial gainful activity since the alleged onset date, (R. 16), he also found that "[t]here has been a continuous 12-month period(s) during which [Keefer] did not engage in substantial gainful activity," *id.*

The ALJ denied Keefer's claim on January 3, 2011, (R. 14-24), which became the final decision of the Commissioner when the Appeals Council refused to grant review on April 11, 2012, (R. 1-6). Keefer then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g)

and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id.* (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin,* 849 F.2d at 1529 (quoting *Bloodsworth,* 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin,* 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb,* 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).   A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.   20 C.F.R. § 404.1520(a)-(f).   Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).   "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.   A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"   *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).   "Once a finding is made that a claimant cannot return to

4

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart,* 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id.*  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale [v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987) ].

*Elam v. R.R. Ret. Bd.,* 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted).  Moreover, "[a] claimant's subjective testimony supported

---

[1]

   This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt,* 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale,* 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id.*

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Keefer had engaged in substantial gainful activity since the alleged onset of his disability, but that there had been a continuous 12-month period where he had not engaged in substantial gainful activity.  (R. 16).  Next, the ALJ acknowledged that Keefer's severe impairments of degenerative disc disease of the lumbar spine, failed back syndrome, status post microdiscectomy, anxiety disorder, personality

disorder, and borderline intellectual functioning met Step Two. (R. 17). The ALJ

then proceeded to the next step and found that Keefer did not satisfy Step Three

since he "does not have an impairment or combination of impairments that meets

or medically equals one of the listed impairments." *Id.* Although the ALJ

answered Step Three in the negative, consistent with the law, *see McDaniel,* 800

F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Keefer

> has the residual functional capacity ["RFC"] to perform light work as
> defined in 20 CFR 404.1567(b) and 416.967(b) except [the ALJ]
> specifically f[ound] that [Keefer] can lift or carry up to 20 pounds
> occasionally and 10 pounds frequently. He can stand and walk for 4
> hours in an 8-hour workday and sit 6 hours in an 8-hour workday. He
> can never climb a ladder, rope, or scaffold. He can occasionally climb
> ramps/stairs, crouch, crawl, kneel, stoop, and balance. He should
> avoid concentrated exposure to hazards and vibrations. He can
> concentrate, persist, and work at pace to perform simple, routine,
> repetitive tasks for 2-hour periods in an 8-hour workday. He can have
> only occasional interaction with the public and can interact
> appropriately with coworkers and supervisors in a stable, routine
> setting.

 (R. 19). Based on this assessment of Keefer's RFC, the ALJ determined Keefer

was unable to perform his past relevant work. (R. 22). Lastly, in Step Five, the

ALJ considered Keefer's age, education, work experience, and RFC, and

determined, based on the Medical Vocational Guidelines found in 20 C .F.R. Part

404, Subpart P, Appendix 2 and on the testimony of a vocational expert ("VE"),

that Keefer "is capable of making a successful adjustment to other work that exists

in significant numbers in the national economy." (R. 23). Because the ALJ

answered Step Five in the negative, he determined that Keefer was not disabled. *Id.*

## V. Analysis

The court now turns to Keefer's contentions that the ALJ improperly (1) applied the pain standard and (2) gave "great weight" to the opinion of Dr. H. Gordon Mitchell.  The court addresses these contentions below.

## A. Pain Standard

As it relates to Keefer's allegations of disabling pain, the ALJ found that although Keefer's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," (R. 20), Keefer's allegations of disabling pain were not fully credible.  Keefer contends that the ALJ's credibility finding is not supported by substantial evidence.  Doc. 10 at 3.  Unfortunately for Keefer, the record belies his contention.  Specifically, consistent with the pain standard in this circuit, the ALJ discredited Keefer's testimony because of the "lack of objective medical evidence to fully support [Keefer's] allegations" and the "glaring inconsistencies in [Keefer's] subjective statements."  (R. 20).  The ALJ noted, for example, that Keefer originally reported that he could not drive because he did not have a driver's license, (R. 191), but later testified that he in fact had one, (R. 46), and that Keefer also reported that he stopped working because of his medical condition, (R. 181), but told consultative examiners David Perez and

Ginger Newton that he left one job because of a "disagreement" and two others because the company went out of business, (R. 309).  Moreover, the ALJ noted that Mr. Perez and Mrs. Newton overheard Keefer "brag[ging] to other consumers about his past ability to trick and cheat people."   (R. 311).  Furthermore, the ALJ cited "the inconsistencies in [Keefer's] tax returns," (R. 20), as an additional reason to discredit his testimony:

> [Keefer's] income tax returns show he usually only had a few hundred dollars in business expenses.  However, his 2008 tax return showed business expenses of $5,000 for supplies [(R. 153)], which far exceeds the expenses of other years and would be enough to drop his actual income below substantial gainful activity levels if he was attempting to manipulate his tax returns and credits.  [Keefer] stated his wife did the work during some of the period[,] but she claimed on the return that she was disabled as well.  These contradictory statements and allegations do not enhance [Keefer's] credibility.

(R. 16).   Ultimately, contrary to Keefer's contentions, these reasons provide substantial support for the ALJ's credibility determination.[2]  Therefore, this court will not "substitute [its] judgment for that of the [Commissioner]."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[2] Keefer does not address the reasons cited by the ALJ to discredit his pain testimony.  Instead, Keefer summarizes the medical evidence that supports his subjective allegations.  *See generally* doc. 10, pp. 5-14.  For example, Keefer argues that "records show that [he] consistently reported … that he suffered low[er] back pain of a magnitude of 6 or 7." *Id*. at 9.  These contentions are unavailing because this court does "not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Moreover, "[e]ven if … the evidence preponderates against the [Commissioner's] decision, [the court] must affirm if the decision is supported by substantial evidence." *Id*. (citations omitted).

**B. Physician's Opinions**

As his final contention of error, Keefer takes issues with the ALJ's reliance on the opinion of Dr. Mitchell, a state agency consultant,[3] who opined that Keefer could lift 10 pounds frequently, 20 pounds occasionally, and could stand for four hours in a work-day.  (R. 21-22, 304).  According to Keefer, Dr. Mitchell's opinion is written "in some type of cryptic language known only to Dr. Mitchell."  Doc. 10, p. 10.  Presumably, Keefer is referring to Dr. Mitchell's assessment in which Dr. Mitchell noted Keefer's failed back syndrome and "S/P Microdiscectomy" and wrote "20/10 with 4 hours standing."  (R. 304).  The ALJ had no trouble understanding Dr. Mitchell's shorthand expression of his opinion on Keefer's functional limitations, and neither does the court.  Thus, Keefer's contention on this issues is unavailing.

Next, Keefer contends that "[i]t is especially disconcerting to the plaintiff that the ALJ [gave] 'great weight' to [the] opinion of [Dr.] Mitchell [ ] at the expense of medical evidence from treating and consulting sources and at the expense of the testimony of the plaintiff and the [VE] at the evidentiary hearing."  Doc. 10, p. 14.  Keefer's contentions miss the mark for several reasons.  First, the ALJ properly discredited Keefer's testimony without relying on Dr. Mitchell's

---

[3] "State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence." 20 C.F.R. § 404.1527(e)(2)(I).

opinion.  *See supra* Part A.  Therefore, a separate basis exists to affirm the ALJ's decision.   Second, the VE's testimony that a hypothetical individual limited to sedentary work, with a level of pain from 7-8, is unable to work, (R. 58-60), – and which forms part of the basis for Keefer's contention that he is disabled – is irrelevant to a credibility determination on a physician's opinion.  *See Stephan v. Barnhart*, 06-2261, 2006 WL 3337489, at *5 (E.D. Pa. Nov. 15, 2006) ("[T]he ALJ may disregard the VE's testimony if he or she discredits the facts underlying the hypothetical question posed to the VE.").  Put differently, the VE's testimony provides no evidence to discredit, or support, Dr. Mitchell's opinion.

Third, and more significantly, the ALJ's determination to give great weight to Dr. Mitchell's opinion is supported by substantial evidence.  The record does not contain – and Keefer does not point to – any treating physician's opinion that conflicts with Dr. Mitchell's opinion.  Instead, Keefer supports his contentions by noting only his diagnoses of back pain and self-reported level of pain when seeking treatment at Huntsville Hospital and Central North Alabama Health Services.  Doc. 10, p. 11; *see* (R. 235-279; 327-392).  However, these diagnoses are consistent with Dr. Mitchell's findings.   Furthermore, Dr. Mitchell's opinion is also consistent with consultative examiner Dr. John Lary, who opined that Keefer's "ability to sit, stand, walk, lift, carry, bend, squat, and reach is impaired." (R. 298). As the record plainly shows, Dr. Mitchell also opined, (R. 304), and the ALJ

found, (R. 19), that Keefer had impairments in these areas.  As the ALJ stated, "I agree [Keefer] has some restrictions; however, Dr. Lary did not specifically state what restriction [Keefer] requires. … [W]e agree [Keefer] has some limitations." (R. 21).  In other words, contrary to Keefer's contentions, the ALJ simply did not credit Dr. Mitchell's opinion "at the expense of" other evidence.  Doc. 10, p. 14. Rather, the ALJ found that the record as a whole supports Dr. Mitchell's opinion.

In further support of his contention of error, Keefer briefly contends that "there are 87 additional pages of medical evidence … which w[ere] not considered by Dr. Mitchell."  Doc. 10, p. 14.  Keefer bases this contention on his meeting with Mrs. Newton and Mr. Perez of the Alabama Department of Rehabilitation Services after Dr. Mitchell's evaluation, and their opinion that Keefer "does not exhibit potential for employment at this time."[4]  (R. 311).  The ALJ, however, gave little weight to their opinion because neither is an accepted medical source.  *See* 20 C.F.R. § 404.1513(d); *Montgomery v. Astrue*, 5:12-CV-00613-RDP, 2013 WL 3152278, at *8, n.5 (N.D. Ala. June 18, 2013).  Notably, Keefer does not challenge the ALJ's determination that Mrs. Newton and Mr. Perez are not accepted medical sources.  Therefore, Keefer "has waived this issue because he did not elaborate on

---

[4] Keefer also bases this contention on the records of his treatment at Central North Alabama Health Services.  While the subsequent treatment records from Central North Alabama Health Services contain diagnoses of back pain and self-reported levels of pain, (R. 327-392), they do not undermine Dr. Mitchell's opinions because these diagnoses are consistent with Dr. Mitchell's opinion.  Therefore, the fact that Dr. Mitchell did not have access to these subsequently created records does not mean that the ALJ erred when he gave weight to Dr. Mitchell's opinions.  *See Lee v. Astrue*, 5:11-CV-2315-LSC, 2012 WL 4479288, at *6 (N.D. Ala. Sept. 26, 2012) ("The consistency of [the physician's] September 2006 opinions with subsequent treatment notes concerning Plaintiff constitutes substantial evidence supporting the ALJ's decision to give great weight to [the physician's] opinions.").

this claim or provide citation to authority about this claim." *Outlaw v. Barnhart*, 197 Fed. App'x 825, 828 (11th Cir. 2006). Moreover, their opinions regarding Keefer's alleged inability to work has no binding effect on the ALJ because "issues regarding whether the claimant is . . . 'unable to work' are reserved to the Commissioner." *Saucier v. Comm'r, Soc. Sec. Admin.*, 552 Fed. App'x 926, 928 (11th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(1)). Significantly, however, by discrediting Mrs. Newton and Mr. Perez's opinion by finding that it is contrary to the evidence, (R. 21), the ALJ properly weighed the medical record in reaching a determination in this case.  Therefore, the ALJ committed no reversible error.

## VI. Conclusion

Based on the foregoing, this court concludes that the ALJ's determination that Keefer is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination.   Therefore, the Commissioner's final decision is **AFFIRMED**.   The court will enter a separate order to that effect simultaneously.

**DONE** the 24th day of June 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE